In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3257

United States of America,

Plaintiff-Appellee,

v.

Tierney M. Hoults,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:00CR30039-001--William D. Stiehl, Judge.

Argued January 31, 2001--Decided February 15, 2001

  Before Bauer, Coffey, and Diane P. Wood, Circuit
Judges.

  Diane P. Wood, Circuit Judge.  The consequences of
being deemed a career offender for purposes of
section 4B1.1 of the U.S. Sentencing Guidelines
are grave: the defendant automatically is
assigned a criminal history category of VI, and
the offense level is typically increased. This
case concerns the requirement for career offender
status of "at least two prior felony convictions
of either a crime of violence or a controlled
substance offense." U.S.S.G. sec. 4B1.1. Tierney
Hoults claims that the district court should not
have characterized one of his prior felony
convictions as a "crime of violence," and that
without this error, he was not a career offender
for guideline purposes. We find Hoults's argument
to be well taken, and we therefore vacate the
sentence and remand for resentencing.

I

  Hoults was convicted after a jury trial of
distributing cocaine base, or crack, in violation
of 21 U.S.C. sec. 841(a)(1). The issue before us
arose in conjunction with the sentencing
proceedings that followed. The presentence report
recommended that Hoults should be sentenced as a
career offender, based in part on a 1995 Illinois
conviction for burglary in Hoults's record. The
probation officer reasoned that this conviction

was for a "crime of violence" within the meaning of U.S.S.G. sec. 4B1.2(a), which defines this term for purposes of sec. 4B1.1 as follows:

The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The government agreed with this recommendation, both on the ground that the 1995 Illinois conviction was burglary of a "dwelling," and on the broader ground that in any event it presented a "serious potential risk of physical injury" to another.

Hoults contested this interpretation of the conviction. He pointed out that the amended information, to which he had pleaded guilty, charged only that he had committed the offense of "BURGLARY--in that said defendant knowingly and without authority entered the Building of Gay R. Harris, located at 1112 Apartment 3 Cherokee, Collinsville, Madison County, Illinois, with the intent to commit therein a theft, in violation of 720 ILCS 5/19-1 . . . ." This is not how the information had initially read. Visible deletions and additions written by hand show that the word "RESIDENTIAL" had originally preceded the word "BURGLARY" in the information, that it had originally said "entered the dwelling place of Gay R. Harris," and that it had originally charged Hoults with violating 720 ILCS 5/19-3. The effect of the changes (no doubt inspired by some kind of plea agreement, although we do not know that and it is unimportant for our purposes) was to reduce the charge against Hoults from residential burglary, a Class 1 felony, to general burglary of a building, a Class 2 felony.

Notwithstanding these deliberate changes to the charge--unmistakable on the face of the information--the district court concluded that even the amended information demonstrated that Hoults had committed burglary of a dwelling, since it used the word "apartment." This led the court also to conclude that because the burglary occurred at an "apartment," the offense posed a serious potential risk of physical injury to

others. On this basis, the court decided that the 1995 Illinois conviction qualified for purposes of sec. 4B1.1 and that Hoults was a career offender. This made a significant difference to the sentencing range Hoults faced. Had the district court found that the Illinois conviction was not for a "crime of violence" under the guidelines, Hoults would not have qualified for career offender treatment, his offense level would have been 26, his criminal history category IV, and the applicable range 92-115 months. As it was, Hoults of course had a criminal history category of VI, and a total offense level of 34, for a range of 262-327 months. The court sentenced him at the bottom of that range, to 262 months.

II

The question whether the district court erred in sentencing Hoults as a career offender is one of law, which we review de novo. United States v. Nelson, 143 F.3d 373, 374 (7th Cir. 1998). There are, in a sense, two questions here: first, did the district court follow the correct procedures in categorizing Hoults's prior Illinois conviction, and second, was that conviction a "crime of violence" for purposes of U.S.S.G. sec.sec. 4B1.1 and 4B1.2? With respect to the procedural question, it is firmly established in this circuit that the court was required to confine its inquiry to the face of the charging instrument--here, the information. See United States v. Shannon, 110 F.3d 382, 384-85 (7th Cir. 1997) (en banc). Both the facts contained in the charging document and the statutory definition of the charged offense are fair game. See id.; United States v. Jackson, 177 F.3d 628, 632 (7th Cir. 1999). Here, as we explain below, we are concerned that the district court based its decision on assumed additional facts that do not appear on the record. Without those additional facts, Hoults's prior offense takes on a different character.

The task before both the sentencing court, and now this court on review, is strictly limited to deciding whether any facts in the information to which Hoults pleaded guilty reveal his offense to be a "crime of violence," or if that is inherent in the statutory definition of the offense with which he was charged. We can dismiss immediately the idea that Hoults committed an offense included within the first part of the definition of "crime of violence" under sec. 4B1.2(a)(1), because it is undisputed that Hoults's burglary did not have as an element the use (or attempted or threatened use) of force against the person of another. The question instead is whether the face of the information shows that he either committed

"burglary of a dwelling," which the guidelines presume is a crime of violence, or if his conduct otherwise presented a "serious potential risk of physical injury to another." See sec. 4B1.2(a)(2).

We conclude that the information does not support such a conclusion. The statutory provision that Hoults ultimately admitted violating through his guilty plea was 720 ILCS 5/19-1, which reads:

[a] person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in the Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft.

This is the general Illinois burglary statute. At the time of Hoults's offense, it was clear that the use of the term "building" excluded a dwelling, because the statute said exactly that: "[t]his offense shall not include . . . the offense of residential burglary as defined in Section 19-3 hereof." 720 ILCS 5/19-1. See also People v. Childress, 633 N.E.2d 635, 647 (Ill. 1994); United States v. Hicks, 122 F.3d 12 (7th Cir. 1997) (recognizing difference between residential burglary under 720 ILCS 5/19-3 and general burglary under 720 ILCS 5/19-1). Later, the Illinois legislature deleted that sentence, and effective June 1, 2001, the residential burglary statute will expressly provide that residential burglary "includes the offense of burglary as defined in Section 19-1." But those changes do not affect Hoults, as the government concedes.

In fact, this case is quite similar to Hicks. There too the defendant had originally been charged with residential burglary under 5/19-3, but the information was later amended pursuant to a plea agreement to reduce the charge to burglary of a building under 5/19-1. See 122 F.3d at 12. The district court, relying on information in the PSR indicating that the buildings the defendant burglarized were in fact dwellings, decided that the offense was the burglary of a dwelling for purposes of sec. 4B1.2 (a)(2). Id. This court reversed, admonishing the district court to look only to the allegations of the charging document when characterizing the offense.

The same problem is present here. The district court, perhaps influenced by the original charge Hoults faced in the state court, made it clear that it thought Hoults had "really" burglarized a dwelling and thus fell within the guideline

definition. Among other things, the court said "[t]he mere fact that the defendant pleaded to and was convicted of the unlawful entry of an apartment carries with it, and I so find, a serious potential risk of injury to others, including but not limited to other residents of the apartment house, visitors to those apartments, whether you are a social visitor or trade visitor . . . ." One can only interpret this statement as reflecting an assumption that the burglary took place at a residence or dwelling. But such an assumption flies in the fact of the obvious and deliberate efforts to scratch from the face of the information references to "residential" and "dwelling place," leaving only the word "apartment" in the clause describing where the building was located. Indeed, as counsel for Hoults argued, although it is normal to assume that a building described as an apartment might be a dwelling, it is not inevitable that this should be the case. Only assumptions that go beyond the face of the information would supply that last crucial fact, and the court is neither permitted to make those assumptions nor to conduct proceedings to fill in the gaps. To put it bluntly, it just does not matter what Hoults "really" did; the only question is what he was convicted of, and the only thing that answers that question is the charging document. We conclude that this information did not charge, and Hoults thus was not convicted of, "burglary of a dwelling" within the meaning of sec. 4B1.2(a)(2).

Realizing the difficulty of defending the "dwelling" possibility, the government's principal effort at oral argument was devoted to defending the district judge's alternate finding that this burglary presented a "serious potential risk of physical injury to another." But, as the passage just quoted demonstrates, the only reason the court thought that this kind of risk of injury existed was because the court believed that the burglary had been of a residence. Yet, if it had really been a burglary of a residence, Hoults would have had to plead guilty to 720 ILCS 5/19-3 (i.e., to the unamended information) and the offense would have been one specifically covered by sec. 4B1.2(a)(2). Apart from the unfounded assumption about the residential nature of the building, there was nothing else on the face of the information that would tend to indicate a serious potential risk of physical injury. Compare Shannon, where the age of the victim and the nature of the sexual act both appeared on the face of the charging document, thus permitting the finding that such a risk of injury indeed existed. 110 F.3d at 387.

The only way we could uphold the district

court's decision would be to conclude that, as a matter of law, burglary of a building other than a dwelling is always a crime of violence under the "otherwise" clause of sec. 4B1.2 (a)(2). On two other occasions, we have declined to take this step. See Nelson, 143 F.3d at 375; Hicks, 122 F.3d at 13. Other circuits to consider this question are divided. Two have held that there is indeed a per se rule under which burglaries of non-residential structures is always a crime of violence. See United States v. Fiore, 983 F.2d 1, 4-5 (1st Cir. 1992); United States v. Hascall, 76 F.3d 902, 904-05 (8th Cir. 1996). (This across-the-board conclusion may be difficult to reconcile with the Supreme Court's decision in Taylor v. United States, 495 U.S. 575 (1990), which held that the word "burglary" in 18 U.S.C. sec. 924(e) had a uniform federal definition and that it did not necessarily encompass anything and everything the states chose to label "burglary.") Three other circuits have said that the per se rule never applies. See United States v. Smith, 10 F.3d 724, 732-33 (10th Cir. 1993) (per curiam); United States v. Spell, 44 F.3d 936, 938 (11th Cir. 1995) (per curiam); United States v. Harrison, 58 F.3d 115, 119 (4th Cir. 1995). Two more have concluded that the inquiry must be undertaken on a case-by-case basis. See United States v. Jackson, 22 F.3d 583, 585 (5th Cir. 1994); United States v. Wilson, 168 F.3d 916, 926-29 (6th Cir. 1999).

Although we have not spoken on the particular question about burglaries presented here, our en banc decision in Shannon came down squarely on the case-by-case approach for purposes of the sexual assault statute involved there. We see nothing in Shannon, however, that logically limited this analytical approach to the particular statute or circumstances of that case. Moreover, both the Supreme Court's methodology in Taylor and the one used by another panel of this court in the related context of deportation proceedings argue for a particularized approach. See Solorzano-Patlan v. INS, 207 F.3d 869, 875-76 (7th Cir. 2000) (requiring further review of charging papers because the statute "defines 'burglary' broadly, encompassing both conduct that does involve a substantial risk that physical force may be used and conduct that does not involve a substantial risk that physical force may be used"). Finally, if all burglaries are to be treated as qualifying offenses, we presume the guidelines would have said so, instead of carefully singling out only "burglary of a dwelling." For all these reasons, we align ourselves with the courts that have required each burglary of a non-dwelling to be judged individually, based on the information properly before the court. Here, that information does not

justify inclusion of Hoults's 1995 Illinois offense on "risk of injury" grounds, any more than it does on "dwelling" grounds.

III

Because the inclusion of the 1995 Illinois offense made the difference to Hoults between treatment as an ordinary offender and career offender treatment, his sentence is hereby VACATED and the case is REMANDED to the district court for resentencing in accordance with this opinion.