**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Earl MATTHEWS,**
**Defendant–Appellant.**

**No. 02–10445.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 2003.

Filed July 7, 2004.

John C. Lambrose, Assistant Federal Public Defender, Las Vegas, NV, for the defendant-appellant.

Peter Ko, Assistant U.S. Attorney, Las Vegas, NV, for the plaintiff-appellee.

Before CUDAHY,* BEEZER and KLEINFELD, Circuit Judges.

CUDAHY, Circuit Judge:

James Earl Matthews appeals his criminal sentence of 120 months' imprisonment, which was imposed in accordance with

* The Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

U.S.S.G. § 2K2.1(a)(2), because the district court determined that his 1987 burglary of an occupied building qualified as a crime of violence under U.S.S.G. § 4B1.2(a)(2). He argues that burglary of an occupied building in Nevada is not a crime of violence according to the United States Sentencing Guidelines, and that the appropriate Guidelines range is therefore 92–115 months.

## I. BACKGROUND

In July 1998, a jury found Matthews guilty of being a felon in possession of a deadly weapon pursuant to 18 U.S.C. § 922(g). The Presentence Investigation Report (PSR) recommended that Matthews qualified for sentencing pursuant to the Armed Career Criminal Act (ACCA), and he was sentenced to 280 months. However, on appeal, we found that the government had failed to prove that Matthews qualified as an armed career criminal, so we vacated his sentence and remanded to the district court for re-sentencing, without limiting review to the existing record. *United States v. Matthews*, 278 F.3d 880, 889–90 (9th Cir. 2002) (en banc). On remand, the government argued that Matthews' base offense level should be set in accordance with U.S.S.G. § 2K2.1(a)(2) because he had two prior convictions which fit the definition of a crime of violence under U.S.S.G. § 4B1.2(a)(2) and qualify him as a Career Offender. The two convictions proffered were a 1986 battery, whose inclusion Matthews did not contest, and a 1987 conviction in Nevada for burglary of an occupied building, which Matthews argued was not a crime of violence according to the Guidelines. The district court, relying mainly on our decision in *United States v. Williams*, 47 F.3d 993 (9th Cir. 1995), found that the burglary counted as a crime of violence and accordingly sentenced Matthews to the statutory maxi-

mum of 120 months, which was below the Guidelines range of 130 to 162 months that otherwise would have applied.

## II. DISCUSSION

"We review the district court's interpretation of the Sentencing Guidelines and its determination that ... [the defendant] is a career offender de novo." *United States v. Kovac*, 367 F.3d 1116, 2004 WL 1058201 at * 1 (9th Cir.2004) (quoting *United States v. Shumate*, 329 F.3d 1026, 1028 (9th Cir. 2003)).

■ United States Sentencing Guidelines Section 2K2.1(a)(2) sets the base offense level for unlawful possession of a firearm at 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of ... a crime of violence." According to the Guidelines, a "crime of violence" includes a felony offense that "is burglary of a dwelling ... or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). A determination of whether a prior conviction qualifies as a predicate offense commences with a categorical approach, under which we may not examine the underlying facts of the prior conviction, but instead "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). If the statute is too broad to qualify categorically, but "documentation or judicially noticeable facts ... clearly establish that the conviction is a predicate conviction for enhancement purposes," then the prior conviction may qualify under a modified categorical approach established by the Supreme Court in *Taylor*. *United States v. Corona–Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002) (en banc) (quoting *Taylor*, 495 U.S.

at 602, 110 S.Ct. 2143). The government concedes that the Nevada statute under which Matthews was convicted of burglary, Nev.Rev.Stat. 205.060, encompasses both dwellings and non-dwellings and therefore does not necessarily contemplate a burglary of a dwelling. (Gov't Br. at 3.) In addition, the government concedes that there are no court documents indicating that the building burglarized by Matthews was a dwelling.[1] *Id.* at 3–4. Therefore, Matthews' conviction is not for a "burglary of a dwelling" under either the categorical or the modified categorical approaches set out in *Taylor.*

Nonetheless, the government argues that Matthews' burglary conviction in 1987 was a crime of violence under the "otherwise" clause of U.S.S.G. § 4B1.2(a)(2) because it "involve[d] conduct that presents a serious potential risk of physical injury to another," namely, burglary of an occupied building. Matthews counters with two arguments. In a Rule 28(j) filing, he argues that our recent decision in *United States v. Wenner,* 351 F.3d 969 (9th Cir.2003), precludes us from considering whether any burglary of a non-dwelling, regardless of its particular circumstances, can be treated as a qualifying offense under the "otherwise" clause. But should we nonetheless proceed to determine whether Matthews' burglary of an occupied building qualifies under the "otherwise" clause, he argues that it does not.

## A. Can Burglaries of Non–Dwellings Qualify Under the "Otherwise" Clause?

■ Before we may decide whether the burglary of an occupied building "involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a), we must first determine whether that decision is in fact foreclosed to us. Matthews would apparently have us interpret our recent decision in *Wenner* to yield the same result as the Tenth Circuit's approach in *United States v. Smith,* 10 F.3d 724, 732–34 (10th Cir. 1993), in which a determination was made that the Sentencing Commission purposefully chose to omit burglaries other than burglaries of a dwelling from § 4B1.2 on policy grounds. Thus, under a narrow interpretation of the "otherwise" clause, non-dwelling burglaries could not qualify as crimes of violence.[2]

1. Matthews pleaded guilty to one of two counts of burglary he was charged with in 1987; the other count was dismissed. (Def.'s Excerpts of Record (EOR) at 54–59.) We note that the PSR for Matthews' current offense described the premises involved in the two 1987 burglaries as a "home" in one case and as a "house" and a "residence" in the other (PSR at 15–16), which would seem to make this an easy case but for the law in this circuit that "a presentence report reciting the facts of the crime is insufficient evidence to establish that the defendant pled guilty to the elements of the generic definition of a crime when the statute of conviction is broader than the generic definition." *United States v. Corona–Sanchez,* 291 F.3d 1201, 1212 (9th Cir. 2002); *contra United States v. Sebero,* 45 F.3d 1075, 1078 (7th Cir.1995) (finding no error in examining PSR in order to determine that cabin referred to ·in charging document was in fact a dwelling); *United States v. Balanga,* 109 F.3d 1299, 1303 (8th Cir.1997) (upholding district court's reliance on facts of prior burglaries recited in uncontested PSR when reviewing for plain error). Thus, we may not rely for our determination upon the facts of Matthews' 1987 burglary conviction as set out in the PSR for his current offense, and the information and the transcript from the plea hearing stated only that Matthews had burglarized a "building." (Def.'s EOR at 54–55, 64.)

2. This approach has been followed, more or less, by the Fourth and Eleventh Circuits. *See United States v. Harrison,* 58 F.3d 115, 119 (4th Cir.1995) (holding that only burglary of a dwelling is crime of violence); *United States v. Spell,* 44 F.3d 936, 938–39 (11th Cir.1995) (excluding all burglaries except those of dwellings and occupied structures).

In *Wenner*, we examined whether a conviction under a state residential burglary statute that can include as a "dwelling" "a fenced area, a railway car, or cargo container" would by its nature qualify as a crime of violence. *Wenner*, 351 F.3d at 972 (citing Wash. Rev.Code § 9A.04.110(5)). The majority first held that, under the categorical approach, "burglary of a dwelling" in § 4B1.2(a)(2) refers to a generic burglary as defined by the Supreme Court in *Taylor*—in other words, unlawfully entering or remaining in a building or structure with intent to commit a crime—that occurred in a dwelling. Thus, the Washington state residential burglary statute addressed by *Wenner* was broader in scope than a § 4B1.2(a)(2) (*Taylor*) "burglary of a dwelling" because it additionally included things that are not buildings or structures under federal law. *See Wenner*, 351 F.3d at 972–73. After determining that the government failed to establish that the defendant had been convicted of a crime of violence under the modified categorical approach, the majority in *Wenner* went on to hold that residential burglary under the Washington statute was not a crime of violence under the "otherwise" clause, because if "residential burglary, no matter how broadly worded" were to qualify as a crime of violence under the "otherwise" clause, it would "render[ ] the limitation on the classification of burglaries ... to burglaries of 'dwellings' mere surplusage." *Wenner*, 351 F.3d at 974–75.

Our holding in *Wenner* is not as restrictive as the Tenth Circuit's holding in *Smith*, which ascribed to the Sentencing Commission an intent to exclude all other burglaries from the category of crimes of violence by the inclusion of the specific crime, "burglary of a dwelling." [3] We did not, in *Wenner*, overrule our earlier deci-

sions in which we had found that burglaries of buildings that are not dwellings *did* qualify (under certain circumstances) as crimes of violence under the "otherwise" clause. *See, e.g., United States v. Sherman*, 928 F.2d 324, 327 (9th Cir.1991) (holding under predecessor definition of "crime of violence" that burglary of *any building* at night wielding a firearm creates serious risks and is therefore a crime of violence under categorical approach to U.S.S.G. § 4B1.2(a)(2)); *Williams*, 47 F.3d at 995 (9th Cir.1995) (holding that where defendant pleaded *nolo contendere* to burglarizing "residence and building occupied by" the victim, his conduct qualified as a crime of violence under the modified categorical approach both because he burglarized a dwelling and because burglary of an occupied structure presented a serious risk of violence). We specifically noted in *Wenner* "a complete absence of any briefing on the issue" whether an overbroad residential burglary could still qualify as a crime of violence under the "otherwise" clause. *Wenner*, 351 F.3d at 975 n. 5. And thus, though we did state that it would be "unsound statutory interpretation to use the general, catchall ... provision to include *all* other burglaries as crimes of violence," *id.* at 975 (emphasis added), the key to *Wenner* is that even though certain conduct (whether defined categorically or by a modified categorical approach) may present a serious potential risk of physical injury to another, it may still be excluded under the "otherwise" clause if including it would render the inclusion of "burglary of a dwelling" surplusage. *Cf. United States v. Riley*, 183 F.3d 1155, 1160 n. 13 (9th Cir.1999) (noting that determination under categorical approach that attempted simple rape was crime of violence under "otherwise" clause did not render the inclusion of the term "forcible sex offenses" super-

---

**3.** We also did not refer to *Smith* or any of its progeny in deciding *Wenner*.

fluous). We thus decline Matthews' invitation to interpret our holding in *Wenner* to mean that burglaries that are not *Taylor* burglaries of a dwelling can *never* qualify as crimes of violence under the "otherwise" clause, and we advance to the question whether Matthews' particular burglary may qualify as a crime of violence under the "otherwise" clause.

## B. *Is the Burglary of an Occupied Building a Crime of Violence Under the "Otherwise" Clause?*

In determining if a conviction satisfies the "otherwise" clause, "courts may consider the statutory definition of the crime and may also consider the conduct 'expressly charged[ ] in the count of which the defendant was convicted.'" *United States v. Young,* 990 F.2d 469, 472 (9th Cir.1993) (quoting U.S.S.G. § 4B1.2, cmt. n. 1). We have previously held that the latter inquiry may consider "conduct charged in the indictment or information, the defendant's guilty plea or plea agreement, and any jury instructions," but that courts "may not ... make a wide ranging inquiry into the specific circumstances surrounding a conviction." *United States v.*

*Wood,* 52 F.3d 272, 275 (9th Cir.1995) (internal quotations omitted).

■ Matthews was charged with and pleaded guilty to "wilfully, unlawfully, and feloniously enter[ing], with intent to commit larceny, that certain building occupied by Cheryl Riley." Whether Matthews' burglary of an occupied building qualifies as a crime of violence because it "otherwise involves conduct that presents a serious potential risk of physical injury to another" is not as easily determined as one might assume. This is because, with respect to a building that has been burglarized, the word "occupied" has two possible meanings. Perhaps this is related to the fact that, although burglary is now often classified as a crime against property, at common law it was considered to be a crime against the habitation and the security of its residents. *See, e.g., United States v. McClenton,* 53 F.3d 584, 587–88 (3d Cir.1995) (citing 85 A.L.R. 428 (2004)). Hence, "occupied" as applied to a burglarized dwelling sometimes refers simply to a person's physical presence in the burglarized premises.[4] A person's presence often results in characterization of the burglary as aggravated or especially dangerous.[5]

4. *See, e.g., United States v. Howze,* 343 F.3d 919, 923 (7th Cir.2003) (in comparing relative risks associated with burglary and robbery, noting that most "potentially occupied" buildings are in fact empty when burglarized); *United States v. Sun Bear,* 307 F.3d 747, 755 (8th Cir.2002) (Melloy, J., dissenting) (noting, in attempting to distinguish auto theft from burglary of a commercial building, that "there is always a risk that, unknown to the burglar, the building is occupied" which is not present with attempted auto thefts); *United States v. Chatman,* 869 F.2d 525, 531 (9th Cir.1989) (O'Scannlain, J., dissenting) ("Most state statutes include offenses that do not necessarily involve any serious risk of physical injury to another, because ... they punish the burglary of unoccupied structures. Even the common law definition of burglary does not require that the dwelling house be occupied at the time of the burglary."), *overruled on*

*other grounds by Taylor,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *People v. Guthrie,* 144 Cal.App.3d 832, 193 Cal.Rptr. 54, 58–59 (1983) (concluding that "for purposes of sections 459 and 460, the word 'occupied' means that persons are actually present in a dwelling"); *Cash v. State,* 557 N.E.2d 1023, 1025 (Ind.1990) (holding that "building and structure occupied" by certain persons in burglary information "sufficiently indicates the presence of persons in the building"); MINN. STAT. § 609.582 (2003) ("burglary of occupied dwelling" requires presence of another person).

5. *See, e.g., Taylor,* 495 U.S. at 588, 596, 597, 110 S.Ct. 2143 (1990) (in the context of the ACCA, repeatedly characterizing burglaries of occupied structures as "an especially dangerous subclass of burglaries"); FLA. STAT. ch.

As such, some circuits have found the burglary of a building where a person is present to qualify as conduct creating a serious risk of physical injury. *See, e.g., United States v. Spell*, 44 F.3d 936, 939–40 (11th Cir.1995) (noting that second degree burglary, which takes place in a "dwelling or occupied building," would qualify as crime of violence, where Florida statute considered burglary of a dwelling or a structure in which person was physically present to be aggravated burglary). This usage of "occupied" would moreover preserve a meaningful significance for the separate specification of "burglary of a dwelling," since not all dwellings would have a person physically present in them at the time of the burglary, and one could reasonably conclude that the specific language was included for precisely this reason.

Other jurisdictions use "occupied" in more of a property sense, to mean "owned," "possessed" or in some other way not vacant or abandoned.[6] The actual physical presence of a person is not relevant. It is this latter meaning of "occu-

pied" which both parties agree is applicable to Matthews' burglary conviction in Nevada.[7] The distinction between these two meanings of "occupied" is significant with respect to our analysis, because the risk of potentially encountering a person in an "occupied" building obviously is much higher if "occupied" means that a person is actually on the premises, as opposed to merely meaning that the premises are "not abandoned." *See Howze*, 343 F.3d at 923 (noting that 87% of burglaries of "potentially occupied" buildings "occur when the building is empty").

We have previously held (using the modified categorical approach) that burglary of an occupied structure is a crime of violence. *See Williams*, 47 F.3d at 995 (noting in the context of charging papers for a second-degree burglary in California of the "residence, and building occupied by" the victim, that burglary of an "occupied structure" creates a serious potential risk of physical injury to another and qualifies as a crime of violence). Although we did not specify in *Williams* whether "occupied"

810.02(3)(c), (4)(a) (2003) (determining degree of burglary of a structure based on whether another person is in the structure at the time of entry); Mo. Rev. Stat. § 569.160(3) (2003) (presence of another person in burglarized structure is first degree offense); N.C. Gen. Stat. § 14–51 (2003) (degree of offense dependent on whether dwelling house or sleeping apartment is "actually occupied" at the time).

6. *See, e.g., United States v. Bennett*, 100 F.3d 1105, 1109 (3d Cir.1996) (noting that Pennsylvania burglary statute defines "occupied structure" as being "adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present"); *People v. McClain*, 105 Mich.App. 323, 306 N.W.2d 497, 498–99 (1981) (noting that in Michigan's burglary statute, " 'occupied dwelling house' includes one that does not require the physical presence of an occupant at the time of the breaking and entering but one which is habitually

used as a place of abode"); Iowa Code § 713.5 (2003) ("occupied structure" mayor may not have a person present); Ohio Rev. Code Ann. § 2909.01(C) (Anderson 2003) ("occupied structure" includes all non-abandoned dwellings as well as any non-dwelling in which, "[a]t the time, any person is present or likely to be present").

7. Matthews never admitted to burglarizing a residence inhabited by a person at the time of the burglary conviction (Appellant's Br. at 7), and he argues that, with respect to his burglary offense, "occupied" was being used in its property sense (Appellant's Br. at 11 n. 5; Appellant's Reply Br. at 5–6). The government agreed at oral argument that "occupied" was being used to indicate that the building was not abandoned and conceded that it could not say whether a person was present at the time of the burglary, arguing that a person's presence was not necessary to qualify the burglary of a non-abandoned building as a crime of violence.

meant that a person was physically present or merely that the burglarized premises had not been abandoned, our determination that the burglary of an "occupied" building created a serious potential risk of violence implies that "occupied" was being used to indicate a person's physical presence.[8] *Compare People v. Guthrie,* 144 Cal.App.3d 832, 193 Cal.Rptr. 54, 58–59 (1983) (concluding that "for purposes of sections 459 and 460, the word 'occupied' means that persons are actually present in a dwelling") *with People v. Brooks,* 133 Cal.App.3d 200, 183 Cal.Rptr. 773, 774 (1982) (referencing charging papers stating that defendant entered "the enclosed loading dock and building occupied by Boys Market," implying that "occupied" as used in burglary charging papers in California does not refer to a person's physical presence). *Williams* is thus neither dispositive nor particularly enlightening regarding the question whether burglary of a non-abandoned building that is not a dwelling "presents a serious potential risk of physical injury to another" when, as here, a person is not physically present.

The decisions of other circuits are similarly unhelpful. As has been widely noted, the circuits are completely split on the resolution of this question. The Fourth and Tenth Circuits refuse to count any burglary of a non-dwelling (whether a person is present or not) as a crime of violence under the "otherwise" clause. *See Harrison,* 58 F.3d at 119; *Smith,* 10 F.3d at 733. But, as we noted earlier, we do not follow these circuits. The Eleventh

Circuit additionally considers burglaries of "occupied structures" where a person is physically present to be crimes of violence. *See Spell,* 44 F.3d at 938–39. Although this seems a reasonable expansion of the Guidelines' coverage, it does not assist our decision, because we are addressing here the other meaning of "occupied." The First and Eighth Circuits include burglaries of commercial buildings as well as dwellings (whether a person is present or not), citing the nearly identical language in the ACCA, under which *all* burglaries are considered to be violent felonies that "present[ ] a serious potential risk of physical injury to another." *See United States v. Fiore,* 983 F.2d 1, 4–5 (1st Cir.1992) (burglary of commercial structure is crime of violence under "otherwise" clause); *United States v. Blahowski,* 324 F.3d 592, 594–95 (2002) (same).

Although the Seventh Circuit has also found burglary of a commercial building to qualify under the "otherwise" clause, *see United States v. Nelson,* 143 F.3d 373, 375 (7th Cir.1998) (burglary of sporting goods store was, under facts of case, crime of violence under "otherwise" clause), it did so not on a *per se* basis as in the First and Eighth Circuits, but rather in accordance with a case-by-case approach to determining whether a particular burglary of a building that is not a dwelling is a crime of violence. *See United States v. Hoults,* 240 F.3d 647, 651–52 (7th Cir.2001) (adopting case-by-case approach). The Fifth and Sixth Circuits also follow a case-by-case approach. *United States v. Wilson,* 168

**8.** We did not undertake a *Wenner*-style analysis in *Williams* of whether including "burglary of an occupied building" as a crime of violence under the "otherwise" clause would render the inclusion of "burglary of a dwelling" surplusage. However, our determination in *Williams* that the defendant's conduct did present a serious risk of violence does not conflict with *Wenner* because, as we noted earlier, including burglaries of buildings where a person was physically present as crimes of violence under the "otherwise" clause would preserve a meaningful significance for the separate specification of "burglary of a dwelling," since not all dwellings would have a person physically present in them at the time of the burglary.

F.3d 916, 929 (6th Cir.1999) (holding that, although burglary of non-dwelling is not *per se* a crime of violence, it may possibly be one under certain circumstances); *United States v. Jackson,* 22 F.3d 583, 585 (5th Cir.1994) (considering particular circumstances of burglary of non-dwelling in determining whether it qualifies as a crime of violence under "otherwise" clause), cited for this proposition by *United States v. Turner,* 305 F.3d 349, 351 (5th Cir.2002).

■ Like the Fifth, Sixth and Seventh Circuits, we are reluctant to decide that all burglaries of non-abandoned buildings are *per se* crimes of violence, and we therefore join them in adopting a case-by-case approach (or, perhaps more accurately, a category-by-category approach) to determining whether particular burglaries qualify as crimes of violence under the "otherwise" clause of U.S.S.G. § 4B1.2(a)(2). Considering the conduct underlying the 1987 burglary to which Matthews pleaded guilty, as set out in the information and plea transcript, we find that burglary of an occupied building—where "occupied" merely indicates lack of abandonment and does not indicate a person's physical presence—is simply too broad a category to necessarily "present[ ] a serious potential risk of physical injury to another" as required by U.S.S.G. § 4B1.2(a)(2). For example, a commercial building may still be "occupied" even if it is used seasonally; thus, someone who breaks into a closed-up shop in a summer resort town during the off-season would be highly unlikely to encounter a person inside, but the shop cannot be said to be abandoned, because the proprietors intend to return to it. Burglaries of non-abandoned buildings encompass

situations involving both commercial and non-commercial premises, both burglaries with and without another person's physical presence, both circumstances in which someone was likely to return shortly or might come to investigate and those where the burglary was unlikely to be discovered for weeks or months. Thus, although some burglaries of non-abandoned buildings that are not dwellings might involve conduct that presents a sufficiently serious risk of physical injury to qualify them as crimes of violence under the "otherwise" clause, *see, e.g., Sherman,* 928 F.2d at 327, we cannot find that *all* such burglaries necessarily qualify.[9]

### III. *CONCLUSION*

Since Matthews' conviction as described in the information and plea transcript does not allow the category of his conduct to be narrowed beyond "burglary of an occupied building," and both parties have agreed that "occupied" was not being used to indicate a person's physical presence, we cannot conclude that Matthews' burglary of an occupied building necessarily presented a serious risk of physical harm to another. Thus, we find that it was error to include Matthews' 1987 burglary conviction as a "crime of violence" under the "otherwise" clause of U.S.S.G. § 4B1.2(a)(2). For the foregoing reasons, we VACATE the sentence imposed by the district court and REMAND for resentencing in accordance with this opinion.

**VACATED AND REMANDED.**

9. We need not determine whether including burglaries of non-abandoned buildings that are not dwellings under the "otherwise" clause would render the inclusion of "burglary of a dwelling" meaningless, because the category of burglaries at issue here fails to present a sufficiently serious risk of physical injury to be considered a crime of violence in the first place.