LIPEZ, Circuit Judge,
concurring in the judgment.
I agree with the majority that we should reject Fiore’s rule that all non *42 residential burglaries are per se crimes of violence within the meaning of the Career Offender Guideline. I also agree that it is far from clear that the Commission intended the opposite per se rule, which would require excluding all non-residential burglaries from the group of career offender predicate offenses. Furthermore, the majority is correct that the opposite per se rule might offend common sense. Certain kinds of non-residential burglaries may well “present[] a serious potential risk of physical injury.” All of this supports the adoption of a middle ground allowing district courts to decide whether the particular kind of non-residential burglary at issue is a crime of violence within the meaning of the residual clause.
The more difficult question is how district courts should make such judgments. Regrettably, the majority’s decision leaves that issue in a state of uncertainty. After declaring that courts should use the categorical approach to distinguish between non-residential burglaries, the majority also states that a federal court should not “go beyond the state definition of the offense of conviction to create subcategories based on facts, such as whether the burglary was during business versus non-business hours.” However, if the defendant was convicted under a broadly worded burglary statute comparable to the generic burglary statute described by the Supreme Court in Taylor v. United States, 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) — “an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime”- — how is the court to determine if the non-residential burglary resulting in a conviction under that statute “present[ed] a serious potential risk of physical injury”? May it consider the specific facts of the crime set forth in the limited set of documents that the majority acknowledges may be consulted in the categorical approach? In rejecting factual sub-categories, the majority appears to say no. If that appearance is deceiving, and the majority does think that some non-element facts may be examined, I do not see how sub-categories can be avoided. As a matter of the common sense invoked by the majority, certain facts (such as the non-residential structure’s proximity to a dwelling or whether it was occupied at the time of the crime) will indicate the serious potential risk of physical injury contemplated by the residual provision, thereby creating factual sub-categories of non-residential burglaries.
The Ninth Circuit has allowed such sub-categorization by considering whether a burglarized non-residential structure was physically occupied at the time of the offense. See United States v. Matthews, 374 F.3d 872, 879-80 (9th Cir.2004); United States v. Williams, 47 F.3d 993, 995 (9th Cir.1995). The Seventh Circuit suggested in United States v. Hoults, 240 F.3d 647, 652 (7th Cir.2001), that non-residential burglaries are not crimes of violence unless particularized, case-by-case facts indicate otherwise. Inevitably, as I have noted, such fact-based distinctions between non-residential burglaries would lead over time to sub-categories of violent and nonviolent non-residential burglaries.
To some extent, I understand the majority’s reluctance to endorse fact-based subcategories of non-residential burglaries. Classically, the categorical approach of Taylor, applied by the Supreme Court in cases like James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), and Begay v. United States, — U.S.-, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), focuses on the elements of a state-defined statute in deciding whether the crime at issue falls within the residual clause of the Career Offender Guideline or the Armed Career Criminal Act (“ACCA”). The facts underlying a particular convic *43 tion may be considered only to determine if the defendant committed a predicate offense where the statute at issue is broadly written to encompass both predicate and non-predicate crimes. Shepard v. United States, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). By contrast, the creation of sub-categories of characteristics for distinguishing between types of nonresidential burglaries requires examination of non-element facts to decide if the offense of conviction is a crime of violence within the meaning of the residual clause.
But I am not convinced that the Supreme Court’s categorical approach to predicate offenses precludes such an analysis. Two primary concerns underlie the categorical analysis articulated in cases like Taylor and Shepard. First, the Supreme Court concluded that Congress opted for a “general approach of using uniform, categorical definitions for predicate offenses.” Taylor, 495 U.S. at 591, 110 S.Ct. 2143. Therefore, “ ‘the meaning of the federal statute should not be dependent on state law.’ ” Id. at 592, 110 S.Ct. 2143 (quoting United States v. Turley, 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957)). Second, the Court found no evidence that Congress had “meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant’s prior offenses.” Taylor, 495 U.S. at 601, 110 S.Ct. 2143. For that reason, the Supreme Court concluded in Shepard that the inquiry into
whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of a colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.
544 U.S. at 26, 125 S.Ct. 1254. If a federal district court confined itself to these documents for the purpose of determining whether a particular kind of non-residential burglary met the requirements of the residual clause of the ACCA or the Career Offender Guideline, it is difficult to see why such an approach would be contrary to the categorical approach formulated by the Supreme Court.
Moreover, the language of the residual clause itself seems to acknowledge the relevance of conduct underlying an offense of conviction. The provision defines “crime of violence” as any offense which either 1) “has as an element the use, attempted use, or threatened use of physical force against the person of another,” or 2) “is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” U.S.S.G. § 4B1.2 (emphasis added). Thus, in direct contrast to the first part of the provision, which focuses on the elements of an offense, the residual clause focuses on the conduct involved.
I acknowledge that an application note to the Career Offender Guideline explains that such conduct must be “expressly charged” in the count of which the defendant was convicted. U.S.S.G. § 4B1.2, cmt. n. 1. This language suggests that any conduct of a defendant considered for the purpose of a crime-of-violence determination under the Career Offender Guideline must be set forth in a charging document. A reference to that conduct in a plea agreement or the transcript of a change of plea proceeding might not be relevant to the crime-of-violence determination. Nevertheless, even this limited reference to the conduct expressly charged suggests that such conduct may be considered in *44 this erime-of-violenee determination even if such consideration has the effect of creating a sub-category of non-residential burglaries.
Indeed, we have precedent in this circuit that seems to contemplate the creation of sub-categories in the context of the Career Offender Guideline. In United States v. Sacko, 178 F.3d 1, 2 (1st Cir.1999), we considered a statutory rape law that protected males and females between the ages of fourteen and sixteen. As we explained in an order denying a petition for rehearing en banc in that case, “this court has been willing on the authority of certain language in Taylor to consider statutory rape statutes as if they encompassed different subordinate offenses depending on the ages of the participants, at least where the specific ages could be ascertained by resort to permissible sources.” Id. at 7. This precedent makes the majority’s outright rejection -of sub-categorization even more puzzling. Exactly what is the majority asking the district court to do in drawing distinctions among non-residential burglaries if sub-categorization is off the table? I cannot answer that question. I anticipate that the district courts will have the same problem.
The difficulty posed by the majority’s prohibition on judicial sub-categorization is less acute where, as here, the burglary statute under consideration explicitly draws distinctions between types of burglaries based, at least in part, on the potential for violence. At the time of Gig-gey’s conviction for the state burglaries at issue here, the Maine provision defined burglary as a Class A crime if the defendant was armed with a firearm and a Class B crime if the defendant carried any other dangerous weapon, burglarized a dwelling, intentionally inflicted physical harm, or intended to inflict physical harm. The statute grouped all other variants of the crime together, simply stating that “[a]ll other burglary is a Class C crime.”
Giggey’s burglaries were all Class C crimes. Thus, the district court presumably could focus solely on that subsection and consider whether, as a matter of federal law, “the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.” James, 127 S.Ct. at 1597. Because the Maine provision seemingly excludes many of the classic indicia of violence — including use of a firearm or other dangerous weapon and infliction of physical harm — the district court in all likelihood would find that a conviction under the “all other burglary” provision of Maine’s burglary statute would not be a crime of violence within the meaning of the Career Offender Guideline. Indeed, with the creation of sub-categories of non-residential burglaries based on non-element facts off the table, I do not know what else the district court could do on remand.
But if the analysis is ultimately that simple, we should just do it ourselves, or at least invite the briefing that would allow us to give the district court some meaningful guidance on the application of the categorical approach to non-residential burglaries. If we had done that, we might have concluded that the majority’s rejection of subcategories of non-residential burglaries based on facts was premature. Instead, the majority has failed to work through the implications of our sensible change in the law, relying instead on the district court to solve the puzzle we have created. That is an unwise confusion of roles.