# United States Court of Appeals
## For the First Circuit

No. 07-2317

UNITED STATES OF AMERICA,

Appellee,

v.

TIMOTHY GIGGEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella, Boudin, Lipez, and Howard, Circuit Judges.

James S. Hewes for appellant.
Judith H. Mizner, Assistant Federal Public Defender, for the Federal Public Defender for the Districts of Massachusetts, New Hampshire and Rhode Island, amicus curiae.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

OPINION EN BANC

December 22, 2008

**LYNCH, <u>Chief Judge</u>.** The court took this case en banc to consider again whether a conviction for a non-residential burglary is per se a "crime of violence" under the Career Offender Sentencing Guideline, U.S.S.G. § 4B1.2. A career offender finding may lead to a longer sentence for a federal defendant. This court has for some time held that a prior conviction for a burglary which is not of a dwelling is per se a "crime of violence" under the Guidelines. <u>United States</u> v. <u>Sawyer</u>, 144 F.3d 191, 195-96 (1st Cir. 1998); <u>United States</u> v. <u>Fiore</u>, 983 F.2d 1, 4-5 (1st Cir. 1992). We now reverse course and hold that a prior conviction for burglary not of a dwelling is not per se a "crime of violence." We hold that whether a prior conviction for non-residential burglary is a "crime of violence" turns on the application of a categorical approach under § 4B1.2(a)(2)'s residual clause. We did not grant en banc review or receive briefing on any other issue.

We decided to reconsider whether non-residential burglary is per se a "crime of violence" under the Guideline for several reasons. One is that the question still affects the length of the sentence received. The Guidelines, while now advisory and not mandatory, remain the starting point for a district court's sentencing decision. <u>Gall</u> v. <u>United States</u>, 128 S. Ct. 586, 596 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). Although the sentencing judge now has considerable leeway to vary

-2-

from the Guidelines range, see Kimbrough v. United States, 128 S. Ct. 558, 570 (2007), the sentencing judge must still consider the extent of deviation between the Guidelines range and the sentence given and ensure the justification is sufficiently compelling to support the degree of variance, Gall, 128 S. Ct. at 597; see also United States v. Thurston, 544 F.3d 22, 25 (1st Cir. 2008); United States v. Boardman, 528 F.3d 86, 87 (1st Cir. 2008) (noting that sentencing judges may depart from the Guidelines range on the basis of a policy disagreement with the Guidelines). As a result, the Guidelines range may substantially influence a particular defendant's sentence, especially when the large increases imposed on career offenders are involved. In this case, the Guidelines range for defendant Timothy Giggey increased to 151 to 188 months under § 4B1.2, instead of 63 to 78 months had he not been found a career offender. The sentencing judge made clear that if he were not bound by our prior law interpreting § 4B1.2, he would have given a lower sentence. United States v. Giggey, 501 F. Supp. 2d 237, 245 (D. Me. 2007).

Further, our earlier per se approach has been criticized as sweeping within its reach defendants who are not violent career offenders, and so do not pose such risks to the public as to warrant prolonged imprisonment. The human and fiscal costs of such unnecessary imprisonment are considerable. Accordingly, two conscientious district judges in this circuit have asked this court

to reconsider en banc and alter our interpretation of § 4B1.2 as to whether a defendant's conviction for burglary of a non-dwelling structure is always a "crime of violence." See Boardman, 528 F.3d at 87 (discussing the district judge's comments at sentencing); Giggey, 501 F. Supp. 2d at 239.

Another reason we reexamine the issue is that there is no sign that the Sentencing Commission will resolve the ambiguity about its intentions in the Career Offender Guideline; an ambiguity has now existed for nearly twenty years regarding whether non-residential burglary is a career offender predicate. In the absence of such guidance, the circuits have struggled with the question and taken at least three different positions on it. The per se approach which we earlier adopted is distinctly a minority position.[1]

Also, very recent Supreme Court opinions interpreting identical language in the residual clause of the Armed Career

---

[1] Of the circuits that have considered the issue, the Second and Eighth have also held that non-residential burglary is per se a "crime of violence" under § 4B1.2. See United States v. Brown, 514 F.3d 256, 268-69 (2d Cir. 2008); United States v. Hascall, 76 F.3d 902, 905-06 (8th Cir. 1996).

Three circuits have held that non-residential burglary is per se not a "crime of violence" under § 4B1.2. See United States v. Harrison, 58 F.3d 115, 119 (4th Cir. 1995); United States v. Spell, 44 F.3d 936, 938-39 (11th Cir. 1995) (per curiam); United States v. Smith, 10 F.3d 724, 732-33 (10th Cir. 1993) (per curiam).

Four others have rejected both per se rules. See United States v. Matthews, 374 F.3d 872, 880 (9th Cir. 2004); United States v. Hoults, 240 F.3d 647, 652 (7th Cir. 2001); United States v. Wilson, 168 F.3d 916, 926-29 (6th Cir. 1999); United States v. Jackson, 22 F.3d 583, 585 (5th Cir. 1994).

Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), give us reason to reconsider our approach. See United States v. Begay, 128 S. Ct. 1581 (2008); James v. United States, 127 S. Ct. 1586 (2007).

Finally, other relevant areas of the law have changed since we adopted our earlier rule in Fiore and Sawyer. Fiore was decided in 1992. It relied on the Supreme Court's decision in Taylor v. United States, 495 U.S. 575 (1990), although recognizing that Taylor construed the ACCA. The Fiore court could not have anticipated the Commission's post-1992 actions on the question of non-residential burglaries, which affect our construction of the Guideline in 2008.

In addition, this court's decision in Sawyer, considering a prior conviction under Maine's burglary statute, interpreted Fiore as holding that all burglaries of non-dwelling buildings which otherwise include the elements of a generic burglary under Taylor are crimes of violence under the Career Offender Guideline. 144 F.3d at 195. Sawyer did not address the later and significant history of the Commission's deliberations on the Guideline. Sawyer also held that the per se approach it considered Fiore to have adopted precluded any consideration of whether the differences between the Maine statute and the Rhode Island statute in Fiore would produce different results utilizing a categorical approach. Sawyer did not have the benefit of the Supreme Court's 2005

-5-

explanation of the categorical approach in <u>Shepard</u> v. <u>United States</u>, 544 U.S. 13 (2005).

I.

A.        <u>Giggey's Federal Crime</u>

On December 19, 2006, Giggey, then age twenty-seven, his slightly younger brother, and a juvenile male decided to burglarize a building on Lisbon Street in Lewiston, Maine.  They chose the building thinking that it contained valuables because it appeared to have a security alarm on its outer door.  To create a diversion, the three set a series of small fires in a nearby vacant building. That building was planned for restoration into new residential, commercial, and office space.  The three went outside to see if the fires were visible from the street and returned after twenty minutes to set additional fires.  The three left the burning building when an alarm sounded and then fled to their homes, fearing that they had been seen.

No one was injured by the fires.  But the flames spread to neighboring buildings and ultimately destroyed four buildings owned by Greely Capital, LLC, as to which Greely Capital had received a $50,000 federal rehabilitation grant from the Department of Housing and Urban Development, which was administered by the City of Lewiston.  The destruction of a federally funded rehabilitation project brought into play a federal criminal statute, 18 U.S.C. § 844(f)(1), which provides: "Whoever

maliciously damages or destroys . . . by means of fire . . . any building . . . in whole or in part owned or possessed by . . . any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both."

On December 22, 2006, Giggey was arrested and held on a state arson charge relating to the fires. On April 9, 2007, the U.S. Attorney's Office filed a one-count information against Giggey, charging him under 18 U.S.C. § 844(f). That same day, Giggey waived indictment and pled guilty to violating 18 U.S.C. § 844(f). Giggey's state arson charge was dismissed upon entry of his guilty plea to the federal crime. Only Giggey's sentence, not his guilt, is therefore at issue.

B.      Giggey's Prior State Court Convictions

At the time of his sentencing, Giggey had several prior adult convictions for violations of Maine's criminal laws. Two are important to this appeal. The first is a burglary conviction from 2000. The relevant count in Giggey's indictment for that crime charged:

> That on or about and between March 23, 2000, and March 25, 2000 in Raymond, Cumberland County, Maine, TIMOTHY ALBERT GIGGEY did enter or surreptitiously remain in a structure namely a garage owned by David Millay located at 100 Wild Acres Road, knowing he was not licensed or privileged to do so, with the intent to commit the crime of theft inside.

On December 7, 2000, Giggey pled guilty to the burglary charged in that count, a Class C crime punishable by up to five years' imprisonment under Maine law.  See Me. Rev. Stat. Ann. tit. 17-A, §§ 401, 1252(2)(C).  For his 2000 burglary conviction, Giggey received a two year sentence with all but ninety days suspended.

Giggey's second relevant state offense is a burglary conviction from 2004.  On June 22, 2004, Giggey waived indictment and pled guilty to "burglary, Class C, alleged to have occurred on February 21st of this year at the Pit Stop Redemption."  He received a thirty month sentence with all but four months suspended for that burglary.

Both the 2000 and 2004 offenses were charged under Maine's burglary statute, which provided:

> 1. A person is guilty of burglary if he enters or surreptitiously remains in a structure, knowing that he is not licensed or privileged to do so, with the intent to commit a crime therein.
> 2. Burglary is classified as:
> A. A Class A crime if the defendant was armed with a firearm, or knew that an accomplice was so armed; and
> B. A Class B crime if:
> (1) The defendant intentionally or recklessly inflicted or attempted to inflict bodily injury on anyone during the commission of the burglary or an attempt to commit the burglary or in immediate flight after the commission or attempt;
> (2) The defendant was armed with a dangerous weapon other than a firearm or knew that an accomplice was so armed;
> (3) The violation was against a structure that is a dwelling place; . . . .
> . . . .

-8-

C.  All  other  burglary  is  a  Class  C crime.

Me. Rev. Stat. Ann. tit. 17-A, § 401 (2000).[2]

Under Maine law, a crime's classification determines its maximum possible punishment.  A Class A crime is punishable by up to thirty years in prison; a Class B crime, ten years; and a Class C crime, five years.  Id. § 1252(2).

Maine's criminal code also defines the term "structure" to mean "a building or other place designed to provide protection for persons or property against weather or intrusion, but does not include vehicles and other conveyances whose primary purpose is transportation of persons or property unless such vehicle or conveyance, or a section thereof, is also a dwelling place."  Id. § 2(24).

The text of the general burglary provision, id. § 401(1), under which Giggey was convicted in 2000 and 2004 itself contained no element involving "the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).

---

[2]  Maine's burglary statute changed slightly between Giggey's 2000 and 2004 convictions.  Those differences are not important for our purposes.

C.          Giggey's Federal Sentencing

At his sentencing for the federal arson crime, the central issue was whether Giggey qualified as a career offender under the Guidelines.  To be a career offender: (1) the defendant must be "at least eighteen years old at the time the defendant committed the instant offense of conviction"; (2) the defendant's instant offense must be "a felony that is either a crime of violence or a controlled substance offense"; and (3) the defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).

Only the third requirement was at issue.  Giggey was twenty-seven years old at the time he committed his arson offense, satisfying the age requirement in § 4B1.1.  Additionally, Giggey's federal offense is a "crime of violence" under the Guideline because arson is one of the enumerated crimes in § 4B1.2(a)(2).  Thus, at sentencing, the key issue became whether Giggey's two predicate state burglary convictions were for crimes of violence under § 4B1.2.

Applying this circuit's per se rule, the district court treated Giggey's two burglary offenses as career offender predicates.  Giggey, 501 F. Supp. 2d at 245.  Giggey's career offender status set his Guidelines range at 151 to 188 months, instead of the 63 to 78 month range he would have received if he

were not a career offender.  Ultimately, the district court chose to vary from the Guidelines range after considering the 18 U.S.C. § 3553(a) factors and sentenced Giggey to ninety-five months' imprisonment.

D.        Giggey's Appeal

Giggey timely appealed his sentence to this court.  On June 10, 2008, we chose to hear this case en banc to address two issues:

> (1) to reconsider whether to adhere to the court's holding in United States v. Fiore, 983 F.2d 1 (1st Cir. 1992), that a conviction under state law for burglary of a commercial structure is to be treated automatically as a crime of violence under the career offender guideline, U.S.S.G. [§] 4B1[.2](a)(2); and,(2) if the court does abandon the per se rule adopted in Fiore, to consider what approach should be taken in determining whether, in a particular case, burglary of a commercial structure falls within the residual clause embracing "conduct that presents a serious potential risk of physical injury to another."

We invited supplemental briefing on these issues from the parties and amici.  The Federal Public Defender for the Districts of Massachusetts, New Hampshire and Rhode Island filed a brief as amicus curiae.

II.

A.        Is Non-Dwelling Burglary Per Se a "Crime of Violence" Under the Career Offender Guideline?

The question before us is one of the intentions of the Commission expressed in the Guidelines.  Congress authorized the

-11-

Commission to enact the Career Offender Guideline in 28 U.S.C. § 994(h), but it left the choice of the language for the Guideline to the Commission.

The language of the Guideline effective at the time of Giggey's sentencing was:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (2004).

From the text of § 4B1.2, there are three ways that an offense can constitute a "crime of violence." First, the crime can be one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." Second, it can be one of the four enumerated offenses in § 4B1.2(a)(2). Third, the offense can be, under the residual clause, one that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

In determining the Commission's intent in adopting the Career Offender Guideline, we could apply either of two time-honored interpretative methods. The first is to look to the text

of § 4B1.2 itself and, if needed, to the history of the Commission's actions. See, e.g., Wilson, 168 F.3d at 926-29.

An alternative method is to draw an analogy to how the courts and Congress have treated identical or nearly identical language in other recidivist sentencing statutes. See, e.g., United States v. Winter, 22 F.3d 15, 18 n.3 (1st Cir. 1994); United States v. Doe, 960 F.2d 221, 225 (1st Cir. 1992). The Supreme Court in James noted the analogy between the Career Offender Guideline and the ACCA. 127 S. Ct. at 1596. Because non-residential burglary under the Maine statute does not have "the use, attempted use, or threatened use of physical force against the person of another" as an element of the offense, the first clause of § 4B1.2(a) is not involved in our analysis. The question concerns the Commission's intent as to last two clauses, the enumerated crimes and the "otherwise" clause.

1.    The Text and History of § 4B1.2(a)

We start by considering the text of § 4B1.2(a)'s second clause, which lists the enumerated offenses. Had the Commission intended all non-residential burglaries to be per se crimes of violence, it could have easily said so in the enumerated offenses, or referred to the definition contained in the ACCA, see 18 U.S.C. § 924(e)(2)(B) ("[T]he term 'violent felony' means any crime . . . that . . . is burglary . . . ."), or used the term "generic

-13-

burglary" and referred to Taylor.  But the Commission chose not to take any of these approaches.

Given these choices, the Commission's restriction in the enumerated clause to only "burglary of a dwelling" was deliberate. This deliberateness is also reflected in the application notes accompanying the Guideline which, at the time of Giggey's sentencing, explained:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.  Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 cmt. n.1 (2004).  "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993).  The Commission's failure to include any burglary other than "burglary of a dwelling" in its extensive list of examples in the commentary to § 4B1.2 suggests that the Commission did not intend non-residential burglary always to be a "crime of violence."

-14-

The history of the Commission's action relating to § 4B1.2 also demonstrates its decision to treat non-dwelling burglaries differently from burglaries of dwellings. As the Guideline was originally adopted in 1987, the Commission defined "crime of violence" merely by reference to 18 U.S.C. § 16. That statute provided:

> The term "crime of violence" means --
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The original commentary accompanying § 4B1.2 explained:

> The Commission interprets ["crime of violence"] as follows: murder, manslaughter, kidnapping, aggravated assault, extortionate extension of credit, forcible sex offenses, arson, or robbery are covered by this provision. Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. <u>Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.</u>

U.S.S.G. § 4B1.2 cmt. n.1 (1987) (emphasis added). In 1989, the Commission amended the text of § 4B1.2 to eliminate its definition by reference to 18 U.S.C. § 16, replacing it with language modeled after the ACCA's definition of "violent felony" and enumerating

-15-

"burglary of a dwelling" as a "crime of violence."  In the 1989 amendments, the Commission also listed "burglary of a dwelling" as a "crime of violence" in the commentary accompanying § 4B1.2 but omitted generic burglary.  The relevant text of § 4B1.2 defining "crime of violence" and its related commentary have remained much the same since the Commission's 1989 amendments.

In 1992, after Fiore was decided, the Commission considered amending § 4B1.2 "to include all burglaries, and not just burglaries of a dwelling."  57 Fed. Reg. 62,832, 62,856 (Dec. 31, 1992).  The proposed amendment explained: "In including all burglaries, this amendment conforms the definition of 'crime of violence' for the purpose of the career offender guidelines to the definition required by statute for the armed career criminal guideline."  Id. at 62,856-57.  The Commission ultimately rejected this amendment.

In 1993, the Commission considered amending the commentary to § 4B1.2 to clarify that "[t]he term 'crime of violence' includes burglary of a dwelling (including any adjacent outbuilding considered part of the dwelling).  It does not include other kinds of burglary."  58 Fed. Reg. 67,522, 67,533 (Dec. 21, 1993).  The proposed amendment explained:

> This amendment clarifies the operation of
> § 4B1.2 (Definitions of Terms Used in Section
> 4B1.1) and addresses an inter-circuit
> conflict.  In United States v. Fiore, 983 F.2d
> 1 (1st Cir. 1992), the First Circuit read
> § 4B1.2 to include all types of burglary

-16-

despite the express listing of burglary of a dwelling in § 4B1.2(1)(ii). In contrast, the Fourth Circuit has held that burglary of a commercial structure is not a "crime of violence" under § 4B1.2. United States v. Talbott, 902 F.2d 1129 (4th Cir. 1990). Similarly, the Tenth Circuit has held that non-residential burglary is not a crime of violence under § 4B1.2. United States v. Smith, [10 F.3d 724 (10th Cir. 1993)].

Id. The Commission ultimately rejected this amendment.

Although we are cautious about drawing conclusions from the Commission's failure to act, these failures reinforce our sense that the Commission chose not to equate all burglaries with crimes of violence.

### 2. The Analogy to the ACCA as to the Enumerated Crimes and Residual Clause

If that were the whole story, we could confidently say that the Commission did not want non-residential burglary always to be included within the definition of "crime of violence." But the matter is complicated by the Commission's choice to model its definition of "crime of violence" after the ACCA's definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B) and to use identical language to the ACCA as to the "otherwise" clause.

A time-honored rule for divining intent is that similar interpretation should be given to language in one source which is borrowed from another legal source. See Greenwood Trust Co. v. Massachusetts, 971 F.2d 818, 827 (1st Cir. 1992); see also Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756 (1979). Indeed, courts

-17-

typically consult the judicial decisions interpreting the original source to inform our understanding of the drafters' intent in using that language in a new context. Greenwood Trust, 971 F.2d at 827. Here, the Commission borrowed § 924(e)(2)(B)'s definition of "violent felony" and used it with only minor changes in § 4B1.2. Because the Career Offender definition of "'crime of violence' closely tracks [the] ACCA's definition of 'violent felony,'" James, 127 S. Ct. at 1596, it is entirely understandable that this court and others have turned to that statutory language and the Supreme Court's interpretation of it in Taylor when interpreting § 4B1.2(a)(2)'s residual clause.

The Supreme Court's interpretation of the ACCA in Taylor must, nonetheless, be put in context. Taylor did not involve a question of the Commission's intent, but of congressional intent. 495 U.S. at 580. The Taylor issue arose because Congress listed generic burglary as a "violent felony" under the ACCA, but did not define "burglary" in the statute. The Supreme Court determined that the term "burglary" as used in the ACCA was broad enough to include both residential and non-residential offenses. Id. at 598 ("[B]urglary for purposes of a § 924(e) enhancement . . . [includes] any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a

crime."). Taylor did not go farther and mandate the Commission to define burglary similarly for Guidelines purposes.

It is also a truism that similar language used in different sources of law may be interpreted differently. United States v. Granderson, 511 U.S. 39, 50-51 (1994); see also United States v. Meade, 175 F.3d 215, 221 (1st Cir. 1999) ("[T]he case for construing one statute in a manner similar to another is weakest when the two have significant differences."). Here, the Commission's listing of the more limited "burglary of a dwelling" instead of using the ACCA's broader term "burglary" or even Taylor's "generic burglary" affects the interpretation of the Guideline's "otherwise" clause.

By contrast to the ACCA, the Career Offender Guideline's enumerated burglary offense is narrower than the parallel provision in the ACCA, and the Commission is obviously cognizant of this difference. See U.S.S.G. § 4B1.4 cmt. n.1 (2007) ("It is to be noted that the definitions of 'violent felony' and 'serious drug offense' in 18 U.S.C. § 924(e)(2) are not identical to the definitions of 'crime of violence' and 'controlled substance offense' used in § 4B1.1 (Career Offender) . . . ."). Furthermore, the language of § 4B1.2 may well reflect the Commission's view in light of detailed data and empirical analysis. See James, 127 S. Ct. at 1596; see also U.S.S.G. ch. 1, pt. A, introductory cmt. n.5 (1987) (stating that in developing the Guidelines, "[the

-19-

Commission] has relied upon estimates of existing sentencing practices as revealed by its own statistical analyses, based on summary reports of some 40,000 convictions, a sample of 10,000 augmented presentence reports, the parole guidelines and policy judgments"). That alone would provide a basis for the Commission to reach different conclusion as to what it meant by "crime of violence" than the Court did in answering the question of congressional intent in Taylor. We think the Commission intended the scope of § 4B1.2 not to be coextensive with generic burglary, even as to the "otherwise" clause.[3]

### 3.   Whether the Commission's Interpretation of § 4B1.2 Contravenes Congressional Intent

The government contended for the first time at oral argument that it was the intent of Congress that non-residential burglary always be treated as a "crime of violence" under the Career Offender Guideline and thus Congress constrained any power by the Commission to decide otherwise. "[E]xcept in extraordinary circumstances, arguments not raised in a party's initial brief and

---

[3] Our decision to change course affects only the procedure by which a district court calculates a defendant's sentence. It does not "prohibit criminal punishment for certain types of primary conduct" or "forbid the imposition of certain categories of punishment for a particular class of defendants" and so is not a retroactive substantive change in the law. Sepulveda v. United States, 330 F.3d 55, 59 (1st Cir. 2003) (discussing the rule from Teague v. Lane, 489 U.S. 288 (1989)). It also is not a "watershed" change in the law any more than United States v. Booker, 543 U.S. 220 (2005), which we held non-retroactive. Cirilo-Muñoz v. United States, 404 F.3d 527, 532-33 (1st Cir. 2005).

instead raised for the first time at oral argument are considered waived." United States v. Pizarro-Berios, 448 F.3d 1, 5 (1st Cir. 2006). We bypass the government's waiver, however, in light of the en banc nature of these proceeding and the need for clarity.

Even considering the argument, we note that the government has offered nothing to show that Congress has taken a position either way on this issue. As to the authorization for the Career Offender Guideline, Congress in 28 U.S.C. § 994(h) simply instructed the Commission to:

> assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and . . . has been convicted of a felony that is . . . a crime of violence . . . and has previously been convicted of two or more prior felonies, each of which is . . . a crime of violence . . . .

Had Congress intended to direct the Commission that non-residential burglary should be a "crime of violence" under the Career Offender Guideline, it could have required the Commission to include all burglary offenses explicitly under § 4B1.2. Until Congress instructs otherwise, the Commission may -- and did -- take a different approach as to what is a "crime of violence."

B.        What Rule Applies in Place of Our Prior Per Se Approach?

Having abandoned our former per se approach, we now address what rule applies in its place.

1.      Rejection of Per Se Rule That Non-Residential
        Burglary May Never Be a "Crime of Violence"

Giggey suggests that we adopt an opposite per se rule that non-residential burglary may never be a "crime of violence." We reject such a rule.[4]  That is not the Commission's intent, as

---

[4]     We recognize that the opposite per se rule has been adopted by three circuits.  In Smith, the Tenth Circuit concluded that the Commission intended never to include non-residential burglary under § 4B1.2(a)(2)'s residual clause, relying in part upon the Commission's failure in 1992 to adopt an amendment that would have included generic burglary among the Guideline's enumerated offenses.  10 F.3d at 733.  Although the Commission's treatment of the proposed 1992 amendment is strong evidence that the Commission did not intend as a per se rule to include all burglary under § 4B1.2, that is only half of the story.  Smith did not have the benefit of the Commission's rejection of the proposed 1993 amendment that would have explicitly excluded non-residential burglary from § 4B1.2's definition of a "crime of violence."  This circuit adopted its own per se rule in Fiore before the 1992 and 1993 proposed amendments.

Likewise, in Spell, 44 F.3d at 938, the Eleventh Circuit held that "[b]y explicitly including the burglary of a dwelling as a crime of violence, the Guidelines intended to exclude from the violent crime category those burglaries which do not involve dwellings and occupied structures."  Based upon the Career Offender Guideline's amendment history and the Commission's choice to model § 4B1.2's definition of "crime of violence" after the ACCA's definition of "violent felony," we think the Commission's intentions are not so clear.

Finally, in Harrison, 58 F.3d at 119, the Fourth Circuit determined that non-residential burglaries are per se excluded from § 4B1.2's definition of a "crime of violence."  Yet, in our view, the Commission's failure to adopt the proposed 1993 amendment that would have explicitly excluded non-residential burglary still leaves open the possibility that certain non-residential burglary offenses could qualify as a "crime of violence" under the Career Offender Guideline.  An earlier case from the Fourth Circuit, United States v. Talbott, 902 F.2d 1129, 1133 (4th Cir. 1990), relied on the original 1987 version of the commentary accompanying § 4B1.2 to reach the same result.  Although the original commentary to § 4B1.2 may have supported Talbott's holding, see U.S.S.G. § 4B1.2 cmt. n.1 (1987) ("Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would

-22-

evident from the language and history of the Guideline.  Further, such a rule would be inconsistent with the analysis of the question under the Guideline's residual "otherwise" clause.  And it would offend common sense.  Non-residential burglary may well present "a serious potential risk of physical injury to another."

Notably absent from the Career Offender Guideline's text and commentary is an express exclusion for non-residential burglary.  Had the Commission intended non-residential burglary never to be counted as a "crime of violence" it could have easily said so, e.g. § 4B1.2 cmt. n.1 ("'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a)."), but it did not.

Indeed, as we have said, the Commission considered in 1993 -- and ultimately rejected -- a proposal to amend the commentary to § 4B1.2 that would have explicitly excluded non-residential burglary from the Guideline's definition of a "crime of violence."  See 58 Fed. Reg. at 67,533 (proposing an additional paragraph in the commentary following § 4B1.2 stating: "The term 'crime of violence' includes burglary of a dwelling (including any adjacent outbuilding considered part of the dwelling).  It does not include other kinds of burglary.").

_____

not be covered."), we cannot reach the same outcome today in view of the Guideline's current commentary, which contains no express exclusion for non-residential burglary.

-23-

2.	Adoption of Categorical Approach to Interpret § 4B1.2(a)(2)'s Residual Clause

In determining whether a prior offense is a "violent felony" under the ACCA, the Supreme Court in a series of cases has consistently adhered to a categorical approach. See Begay, 128 S. Ct. at 1584; James, 127 S. Ct. at 1594; Shepard, 544 U.S. at 17; Taylor, 495 U.S. at 602. The categorical approach requires that federal courts "look only to the fact of conviction and the statutory definition of the prior offense." James, 127 S. Ct. at 1594 (quoting Shepard, 544 U.S. at 17). Federal courts "do not generally consider the 'particular facts disclosed by the record of conviction.'" Id. (quoting Shepard, 544 U.S. at 17). "That is, we consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." Id. (emphasis in original).

The Commission, in our view, intended that this categorical approach be utilized in interpreting the Career Offender Guideline, by using identical language to the ACCA in the residual clause and through its commentary.[5] This has been our

_____

5	In particular, the Commission's advice that the Guideline's residual clause includes an offense if "by its nature, [it] present[s] a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added), directs the sentencing judge to consider the nature of the offense of conviction. Furthermore, the Commission instructed sentencing judges to consider the conduct "expressly charged." Id. The Commission added the "expressly charged" language to the commentary

-24-

consistent approach in post-Shepard cases where the predicate crimes were not burglary offenses. See United States v. Williams, 529 F.3d 1, 4 (1st Cir. 2008).

The other circuits uniformly apply a categorical approach when considering whether non-burglary crimes are included under § 4B1.2(a)(2)'s residual clause.[6]

---

accompanying § 4B1.2 in 1991 to "clarif[y] that the application of §4B1.2 is determined by the offense of conviction (i.e., the conduct charged in the count of which the defendant was convicted)." U.S.S.G. app. C, amend. 433. Other circuits have recognized that the 1991 amendment repudiated earlier cases applying a fact-intensive, case-by-case approach to determine whether a particular defendant's crime is a "crime of violence." See United States v. Walker, 393 F.3d 819, 821 (8th Cir. 2005), abrogated on other grounds by United States v. McCall, 439 F.3d 967 (8th Cir. 2006) (en banc); United States v. Arnold, 58 F.3d 1117, 1123 (6th Cir. 1995); United States v. Fitzhugh, 954 F.2d 253, 255 (5th Cir. 1992); United States v. Johnson, 953 F.2d 110, 113 (4th Cir. 1991) ("[T]he revised commentary appears to disfavor a wideranging inquiry into the specific circumstances surrounding a conviction.").

[6]    See United States v. Alexander, 543 F.3d 819, 823 (6th Cir. 2008); United States v. Savage, 542 F.3d 959, 964 (2d Cir. 2008); United States v. Archer, 531 F.3d 1347, 1350 (11th Cir. 2008); United States v. Curtis, 481 F.3d 836, 838 (D.C. Cir. 2007); United States v. Siegel, 477 F.3d 87, 90 (3d Cir. 2007); United States v. Garcia, 470 F.3d 1143, 1148 (5th Cir. 2006); United States v. Piccolo, 441 F.3d 1084, 1086 (9th Cir. 2006); United States v. Kendrick, 423 F.3d 803, 809 (8th Cir. 2005); United States v. Cole, 298 F.3d 659, 661 (7th Cir. 2002); United States v. Pierce, 278 F.3d 282, 286 (4th Cir. 2002); United States v. Zamora, 222 F.3d 756, 764 (10th Cir. 2000).

Those circuits which have rejected either per se rule regarding non-residential burglary convictions also apply a categorical approach to burglary crimes.[7]

Under the categorical approach, it is a question of federal law whether the state statute of conviction meets the definition in the sentencing provision's residual clause -- "otherwise involves conduct that presents a serious potential risk of physical injury to another." United States v. Peterson, 233 F.3d 101, 107 (1st Cir. 2000). That federal law conclusion does not turn on what the individual defendant actually did, but on comparing the elements of the state crime against the residual "otherwise" clause and drawing some conclusions. Because the underlying state crimes may vary, the use of the categorical approach to non-dwelling burglaries may produce different results in different states. For example, applying the categorical approach, the Seventh and Ninth Circuits have found certain prior state law burglary convictions not to be crimes of violence under the Guideline's residual clause, depending upon the statutory elements of the offense charged. See Hoults, 240 F.3d at 652; Matthews, 374 F.3d at 880.

The government argues that there is a loss to national uniformity in the application of the Career Offender Guideline if we abandon our per se approach. That is true to a certain extent,

---

[7]    See Matthews, 374 F.3d at 877; United States v. Turner, 305 F.3d 349, 351 & n.3 (5th Cir. 2002); Hoults, 240 F.3d at 650; Wilson, 168 F.3d at 928-29.

but not persuasive. That loss results, however, from the choice the Commission made. The government made very similar arguments in Shepard, which were rejected. 544 U.S. at 21-23. It is not uncommon for federal sentencing to be affected by the states' various articulations of their own criminal statutes. E.g., U.S.S.G. § 4A1.1 (making the calculation of criminal history category dependent upon prior state sentencing decisions). Indeed, "[t]o the extent that enhancement provisions are 'intended to supplement the States' law enforcement efforts against career criminals,' it is more fundamentally fair to act in ways 'consistent with the prerogatives of the States in defining their own offenses.'" United States v. Damon, 127 F.3d 139, 146 (1st Cir. 1997) (citation omitted) (quoting Taylor, 495 U.S. at 581, 582) (internal quotation marks omitted).

The Supreme Court has provided some rules as to how the categorical approach is to be applied. There is a procedural aspect, which limits the sources of information to which a federal sentencing court may look. In all cases, the sentencing court looks at the statutory definition of the prior offense. There is a restricted list of other documents[8] to which a court may look in "a

---

[8] For convictions resulting from a jury verdict, these additional sources include the charging instruments and jury instructions. Taylor, 495 U.S. at 602. For guilty pleas, the federal sentencing court may review the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Shepard, 544 U.S. at 16.

-27-

narrow range of cases." Shepard, 544 U.S. at 17 (quoting Taylor, 495 U.S. at 602). As Taylor held: "This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary." 495 U.S. at 602. This includes both states with burglary statutes that provide "a broader definition of burglary," Shepard, 544 U.S. at 17, and states with statutes not labeled as burglary statutes, Taylor, 495 U.S. at 599. Taylor gave as an example "a State whose burglary statutes include entry of an automobile as well as a building," id. at 602, and permitted the court to look to "the indictment or information and jury instructions," id., to see if "the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict," id.; see also Shepard, 544 U.S. at 17; Damon, 127 F.3d at 142.

Both Taylor and Shepard rejected a fact-specific approach, saying "the practical difficulties and potential unfairness of a factual approach are daunting." Shepard, 544 U.S. at 20 (quoting Taylor, 495 U.S. at 601). The approach adopted avoids "subsequent evidentiary enquiries into the factual basis for the earlier conviction." Id. Shepard articulated a strong interest in avoiding collateral trials and confining the inquiry to certain judicial records. Id. at 23.

-28-

Under the categorical approach, a federal sentencing court may not create a series of federal subcategorizations to fit the facts of a particular case. We reject the argument made by the Federal Defender Office that the federal court should go beyond the state definition of the offense of conviction to create subcategories based on facts, such as whether the burglary was during business versus non-business hours. If the state statute does not contain such a distinction, the federal court may not create one for Career Offender Guideline purposes.

Recent interpretative guidance on the categorical approach comes from James and Begay. James holds that attempted burglary poses the same risks of physical injury to another as the completed crime. 127 S. Ct. at 1595. To define the elements of a particular offense, James also reinforces that a court must consider the statutory language on its face of the prior crime of conviction and the authoritative interpretations of it from the state's courts at the outset of its analysis under the categorical approach. Id. at 1594.

Under James, the sentencing court looks to whether that risk is comparable to its closest analog among the enumerated offense in the Guideline, 127 S. Ct. at 1594 -- here, "burglary of dwelling." James spoke of this analysis as being probabilistic and stressed that not "every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury

before the offense can be deemed a violent felony." Id. at 1597 (citing Gonzales v. Duenas-Alvarez, 127 S. Ct. 815, 822 (2007)). "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." Id. James was thus concerned with the degree of risk posed by the state crime considered in the abstract.

In Begay, the court added a refinement: the predicate offense must be at least "roughly similar, in kind as well as in degree of risk," to the enumerated crimes to conclude that it is within the intended reach of the residual clause. 128 S. Ct. at 1585. Begay assumed that the state offense of driving under the influence ("DUI") did "present[] a serious potential risk of physical injury to another" within the meaning of the ACCA, but the Court held that DUI is not similar in kind to the enumerated crimes and so does not fall within the ACCA's residual clause. Id. at 1588.

Neither the comparative degree of risk analysis nor the similarity in kind inquiry within the categorical approach will always lead to clear answers. It is quite possible that using the categorical analysis will turn on fine distinctions. See, e.g., Peterson, 233 F.3d at 108 (finding that Rhode Island's breaking and entering statute was not a "violent felony" under the ACCA because, unlike burglary as defined in Taylor, the breaking and entering

-30-

crime had no requirement that the defendant intended to commit a crime inside the structure).

The categorical approach, as we have noted before, will produce results which may seem to the public to be anomalous. Damon, 127 F.3d at 145. Some offenders who in fact committed a prior violent offense under a statute whose elements do not involve the risk of violence will not be found to be career offenders; whereas others who in fact committed a non-violent offense under a statute whose elements do involve the risk of violence will be found to be career offenders. The new flexibility given to sentencing judges under the advisory Guidelines can be used to consider such anomalies when determining the defendant's actual sentence.

In this case, we did not invite and have not received briefs on the application of the categorical approach, including the recent James and Begay refinements, to the crimes of conviction under the Maine statute. That issue is remanded to the district court for decision after full briefing. We express no view now as to any sentence which Giggey may ultimately receive.

### III.

We vacate Giggey's sentence and remand for resentencing consistent with this opinion.

**-Concurring Opinions Follow-**

**TORRUELLA, <u>Circuit Judge</u>** (Concurring in the opinion and judgment). I concur in Chief Judge Lynch's opinion which I believe states the law appropriately under the present circumstances. I also register my agreement with the concerns raised by Judge Lipez in his concurrence regarding how this approach will be applied. However, I believe that this en banc case is not the appropriate forum to address these issues.

**-Concurring Opinion Follows-**

**LIPEZ, Circuit Judge**, concurring in the judgment.  I agree with the majority that we should reject <u>Fiore</u>'s rule that all non-residential burglaries are per se crimes of violence within the meaning of the Career Offender Guideline.  I also agree that it is far from clear that the Commission intended the opposite per se rule, which would require excluding all non-residential burglaries from the group of career offender predicate offenses.  Furthermore, the majority is correct that the opposite per se rule might offend common sense.  Certain kinds of non-residential burglaries may well "present[] a serious potential risk of physical injury."  All of this supports the adoption of a middle ground allowing district courts to decide whether the particular kind of non-residential burglary at issue is a crime of violence within the meaning of the residual clause.

The more difficult question is how district courts should make such judgments.  Regrettably, the majority's decision leaves that issue in a state of uncertainty.  After declaring that courts should use the categorical approach to distinguish between non-residential burglaries, the majority also states that a federal court should not "go beyond the state definition of the offense of conviction to create subcategories based on facts, such as whether the burglary was during business versus non-business hours."  However, if the defendant was convicted under a broadly worded burglary statute comparable to the generic burglary statute

-33-

described by the Supreme Court in <u>Taylor</u> v. <u>United States</u>, 495 U.S. 575, 298 (1990) -- "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime" -- how is the court to determine if the non-residential burglary resulting in a conviction under that statute "present[ed] a serious potential risk of physical injury"? May it consider the specific facts of the crime set forth in the limited set of documents that the majority acknowledges may be consulted in the categorical approach? In rejecting factual sub-categories, the majority appears to say no. If that appearance is deceiving, and the majority does think that some non-element facts may be examined, I do not see how sub-categories can be avoided. As a matter of the common sense invoked by the majority, certain facts (such as the non-residential structure's proximity to a dwelling or whether it was occupied at the time of the crime) will indicate the serious potential risk of physical injury contemplated by the residual provision, thereby creating factual sub-categories of non-residential burglaries.

The Ninth Circuit has allowed such sub-categorization by considering whether a burglarized non-residential structure was physically occupied at the time of the offense. <u>See</u> <u>United States</u> v. <u>Matthews</u>, 374 F.3d 872, 879-80 (9th Cir. 2004); <u>United States</u> v. <u>Williams</u>, 47 F.3d 993, 995 (9th Cir. 1995). The Seventh Circuit suggested in <u>United States</u> v. <u>Hoults</u>, 240 F.3d 647, 652 (7th Cir.

2001), that non-residential burglaries are not crimes of violence unless particularized, case-by-case facts indicate otherwise. Inevitably, as I have noted, such fact-based distinctions between non-residential burglaries would lead over time to sub-categories of violent and non-violent non-residential burglaries.

To some extent, I understand the majority's reluctance to endorse fact-based sub-categories of non-residential burglaries. Classically, the categorical approach of Taylor, applied by the Supreme Court in cases like James v. United States, 127 S. Ct. 1586 (2007), and Begay v. United States, 128 S. Ct. 1581 (2008), focuses on the elements of a state-defined statute in deciding whether the crime at issue falls within the residual clause of the Career Offender Guideline or the Armed Career Criminal Act ("ACCA"). The facts underlying a particular conviction may be considered only to determine if the defendant committed a predicate offense where the statute at issue is broadly written to encompass both predicate and non-predicate crimes. Shepard v. United States, 544 U.S. 13, 16 (2005). By contrast, the creation of sub-categories of characteristics for distinguishing between types of non-residential burglaries requires examination of non-element facts to decide if the offense of conviction is a crime of violence within the meaning of the residual clause.

But I am not convinced that the Supreme Court's categorical approach to predicate offenses precludes such an

analysis. Two primary concerns underlie the categorical analysis articulated in cases like Taylor and Shepard. First, the Supreme Court concluded that Congress opted for a "general approach of using uniform, categorical definitions for predicate offenses." Taylor, 495 U.S. at 591. Therefore, "'the meaning of the federal statute should not be dependent on state law.'" Id. at 592 (quoting United States v. Turley, 352 U.S. 407, 411 (1957)). Second, the Court found no evidence that Congress had "meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses." Taylor, 495 U.S. at 601. For that reason, the Supreme Court concluded in Shepard that the inquiry into

> whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of a colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

544 U.S. at 26. If a federal district court confined itself to these documents for the purpose of determining whether a particular kind of non-residential burglary met the requirements of the residual clause of the ACCA or the Career Offender Guideline, it is difficult to see why such an approach would be contrary to the categorical approach formulated by the Supreme Court.

Moreover, the language of the residual clause itself seems to acknowledge the relevance of conduct underlying an offense of conviction. The provision defines "crime of violence" as any offense which either 1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or 2) "is burglary of a dwelling, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct</u> that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2 (emphasis added). Thus, in direct contrast to the first part of the provision, which focuses on the <u>elements</u> of an offense, the residual clause focuses on the <u>conduct</u> involved.

I acknowledge that an application note to the Career Offender Guideline explains that such conduct must be "expressly charged" in the count of which the defendant was convicted. U.S.S.G. § 4B1.2, cmt. n.1. This language suggests that any conduct of a defendant considered for the purpose of a crime-of-violence determination under the Career Offender Guideline must be set forth in a charging document. A reference to that conduct in a plea agreement or the transcript of a change of plea proceeding might not be relevant to the crime-of-violence determination. Nevertheless, even this limited reference to the conduct expressly charged suggests that such conduct may be considered in this crime-of-violence determination even if such consideration has the effect of creating a sub-category of non-residential burglaries.

Indeed, we have precedent in this circuit that seems to contemplate the creation of sub-categories in the context of the Career Offender Guideline. In United States v. Sacko, 178 F.3d 1, 2 (1st Cir. 1999), we considered a statutory rape law that protected males and females between the ages of fourteen and sixteen. As we explained in an order denying a petition for rehearing en banc in that case, "this court has been willing on the authority of certain language in Taylor to consider statutory rape statutes as if they encompassed different subordinate offenses depending on the ages of the participants, at least where the specific ages could be ascertained by resort to permissible sources." Id. at 7. This precedent makes the majority's outright rejection of sub-categorization even more puzzling. Exactly what is the majority asking the district court to do in drawing distinctions among non-residential burglaries if sub-categorization is off the table? I cannot answer that question. I anticipate that the district courts will have the same problem.

The difficulty posed by the majority's prohibition on judicial sub-categorization is less acute where, as here, the burglary statute under consideration explicitly draws distinctions between types of burglaries based, at least in part, on the potential for violence. At the time of Giggey's conviction for the state burglaries at issue here, the Maine provision defined burglary as a Class A crime if the defendant was armed with a firearm and a

Class B crime if the defendant carried any other dangerous weapon, burglarized a dwelling, intentionally inflicted physical harm, or intended to inflict physical harm.  The statute grouped all other variants of the crime together, simply stating that "[a]ll other burglary is a Class C crime."

Giggey's burglaries were all Class C crimes.  Thus, the district court presumably could focus solely on that subsection and consider whether, as a matter of federal law, "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another."  James, 127 S. Ct. at 1597.  Because the Maine provision seemingly excludes many of the classic indicia of violence – including use of a firearm or other dangerous weapon and infliction of physical harm – the district court in all likelihood would find that a conviction under the "all other burglary" provision of Maine's burglary statute would not be a crime of violence within the meaning of the Career Offender Guideline.  Indeed, with the creation of sub-categories of non-residential burglaries based on non-element facts off the table, I do not know what else the district court could do on remand.

But if the analysis is ultimately that simple, we should just do it ourselves, or at least invite the briefing that would allow us to give the district court some meaningful guidance on the application of the categorical approach to non-residential burglaries.  If we had done that, we might have concluded that the

majority's rejection of sub-categories of non-residential burglaries based on facts was premature.  Instead, the majority has failed to work through the implications of our sensible change in the law, relying instead on the district court to solve the puzzle we have created.  That is an unwise confusion of roles.