# United States Court of Appeals
## For the First Circuit

No. 10-1865

REDONDO WASTE SYSTEMS, INC.; BIG BLUE CORP.,

Plaintiffs, Appellants,

HAYDEE REDONDO MAYMÍ; ANGEL LUIS PÉREZ RODRÍGUEZ,

Plaintiffs,

v.

CARLOS LÓPEZ-FREYTES, Former Executive Director of the Puerto Rico Environmental Quality Board and President of its Governing Board in his official and personal capacity; ANGEL BERRIOS-SILVESTRE, Associate Member of the Governing Board of the Puerto Rico Environmental Quality Board in his official and personal capacity; EUGENE P. SCOTT-AMY, Vice-President of the Governing Board of the Puerto Rico Environmental Quality Board; JULIO IVÁN RODRÍGUEZ-COLÓN, Manager of the Land Program of the Puerto Rico Environmental Quality Board and Alternate Member of its Governing Board, in his official and personal capacity,

Defendants, Appellees,

JAVIER J. RUA, Executive Director of the Puerto Rico Environmental Quality Board and President of its Governing Board,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Thompson, Circuit Judges.

Fernando Luis Gallardo, Sr., with whom Woods & Woods LLP was on brief, for appellants.

Ivonne Cruz Serrano, with whom Maymí, Rivera & Rotger, P.S.C. was on brief, for appellees.

October 18, 2011

**THOMPSON**, **Circuit Judge**. Plaintiffs Redondo Waste Systems, Inc., and Big Blue Corp. (collectively "Redondo") appeal the district court's dismissal of their complaint alleging various malfeasance by the Puerto Rico Environmental Quality Board ("EQB"). Because Redondo's complaint states no plausible claim against any identifiable defendant, we affirm.

Redondo is a Puerto Rico-based business engaged in the treatment and disposal of regulated biomedical waste (sometimes abbreviated RBW). On November 17, 2008, Redondo filed the complaint at issue against the members of EQB's Governing Board, specifically Javier Rua, Carlos López-Freytes, Angel Berrios-Silvestre, Eugene Scott-Amy, and Julio Rodríguez-Colón. Whatever its legal weaknesses, the complaint tells a somewhat coherent story that we will now sum up.[1]

Until 2002, Redondo's main method of waste disposal was incineration; that year, it invested in more environmentally friendly shredding equipment. A year later, Redondo began experiencing problems with its shredder. It therefore requested — and received — defendant Julio Rodríguez-Colón's approval to use autoclaves (which treat waste using high-temperature water vapor) rather than the shredder. This arrangement apparently worked for a few years, but in August 2006 EQB's inspector (and non-defendant)

---

[1] Redondo's brief to us includes allegations that do not appear in its complaint; we limit our discussion to material that does appear in the complaint.

María de los Angeles Ortiz recommended that EQB issue an order shutting down Redondo's operations. On the same date, Ortiz threatened to fine the operator of the Yauco landfill if it received waste from Redondo. In November 2006, EQB ordered Redondo to stop collecting waste and to select an alternative facility for destroying the waste it had already accumulated.

For the next month, Redondo tried to work with EQB to get up and running again, but EQB remained mute or unhelpful. In late December 2006, Redondo sought a federal-court injunction requiring EQB to certify a replacement shredder Redondo had purchased. Redondo's complaint alleges that "the Court required EQB to certify [Redondo's] shredder," but the district court docket shows that all Redondo's requests for injunctive relief were denied. In any event, Redondo resumed treating and disposing of waste in January 2007.

In February 2007, Redondo's second shredder broke. Around the same time, an EQB inspector determined that Redondo had been sending inadequately treated waste to the Yauco landfill.[2] Again the landfill stopped receiving waste from Redondo. Redondo sought a waiver from EQB (a request that EQB never acted on) and a bankruptcy-court injunction ordering the Yauco landfill operator to resume receiving treated waste from Redondo (which the court

[2] The complaint says the inspection occurred in 2006, but we may safely infer from context that 2007 is actually the correct year.

-4-

denied). In March 2007, EQB inspected Redondo's facility and determined that its shredder was in working order. EQB accordingly certified the shredder but ordered Redondo not to receive any more waste until it had dealt with the four million pounds that had accumulated while its equipment was broken or decertified. EQB rejected several of Redondo's proposed plans for dealing with this accumulated waste, finally appointing a company called Western Medical to do the job.[3]

Redondo's complaint alleges that EQB treated Redondo's competitor BFI/Stericycle much more favorably than it treated Redondo. Before 2003, BFI/Stericycle did not properly destroy any regulated biomedical waste but only once received a violation notice from EQB. Nor did EQB ever stop any landfill from receiving waste from BFI/Stericycle. Apparently because EQB would not act on its own to make BFI/Stericycle conform to Puerto Rico's waste-treatment laws, Dr. Haydee Redondo (an owner and corporate officer of Redondo) filed a complaint with EQB in 2001. But it does not appear anything came of this complaint; instead, EQB actually authorized BFI/Stericycle to dispose of inadequately treated waste in the Humaco landfill in 2002. Redondo makes no allegations about any other aspect of EQB's treatment of BFI/Stericycle after 2002,

---

[3] At the conclusion of this process, Redondo converted a pending bankruptcy petition from reorganization to liquidation, allegedly because of costs it incurred in dealing with EQB.

save for the implication that in 2003 BFI/Stericycle began properly destroying waste.

Redondo's complaint asserts four claims unmoored from any predicate factual allegations: (1) a request for declaratory judgment acknowledging that EQB's administrative adjudication process violates due process because of actual or structural bias; (2) an assertion that EQB retaliated against Redondo because of its protected speech, in violation of the First Amendment and 42 U.S.C. § 1983; (3) an assertion that EQB deprived Redondo of property without notice or hearing, in violation of the Fourteenth Amendment and § 1983; and (4) an assertion that EQB arbitrarily treated Redondo differently from its competitors, in violation of the Fourteenth Amendment and § 1983. On May 13, 2009, the defendants responded to the complaint with a Rule 12(b)(6) motion to dismiss. On June 25, 2009, Redondo conceded portions of the motion to dismiss,[4] opposed others, and suggested that it would amend its complaint (but did not actually file a proposed amended complaint).

On March 31, 2010, the district court granted the motion to dismiss, relying primarily on the complaint's failure to link any claim to any particular defendant. On April 28, 2010, Redondo filed a motion to alter or amend judgment, finally attaching its

---

[4] The complaint originally included individual plaintiffs, who Redondo conceded should be dismissed from the complaint because they lacked standing. The complaint also listed all defendants in their individual and official capacities, and Redondo conceded that the official-capacity claims were barred by the Eleventh Amendment.

proposed amended complaint.  The defendants objected, and on June 16, 2010, the court denied the motion.  This appeal followed.  We have jurisdiction under 28 U.S.C. § 1291.

We review de novo the district court's order dismissing Redondo's complaint.[5]  Rios-Colón v. Toledo-Davila, 641 F.3d 1, 4 (1st Cir. 2011).  We must reinstate the complaint if it "has facial plausibility" — in other words, if Redondo has pled "factual content that allows [us] to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  For us to draw such an inference, Redondo's complaint must allege facts linking each defendant to the grounds on which that particular defendant is potentially liable.  Id. at 1948.  If the complaint fails to do so, then we must affirm the dismissal order.  Id.

The complaint fails the plausibility test spectacularly. Not only is no defendant specifically linked to any actionable conduct, but one of the captioned defendants is not even mentioned

---

[5] Redondo suggests that we review the district court's dismissal for abuse of discretion, and carps that the dismissal was so far outside the bounds of judicial authority that it violates due process.  These positions are nonsensical.  See Farm Credit Bank of Balt. v. Ferrera-Goitia, 316 F.3d 62, 68 (1st Cir. 2003) (rejecting "extravagant" argument that basic legal defects amount to patent excess of power violating due process).

in the body of the complaint.  Here is a summary of every mention of each defendant[6]:

**Javier Rua** appears in the caption as "Executive Director of [EQB] and President of its Governing Board."  The complaint never mentions him again.

**Carlos López-Freytes** appears in the caption as "Former Executive Director of [EQB] and President of its Governing Board." The complaint alleges that he supervised the other defendants in all their unspecified but allegedly illegal acts.  Apparently when Redondo purchased a shredder, the financing bank contacted López. Additionally, Redondo sent López a letter requesting that an EQB inspector visit its facility to certify its new shredder; López did not answer the letter.  And finally, after EQB shut down Redondo's operations in 2006, López publically threatened to fine companies that sent Redondo regulated biomedical waste anyway.

**Angel Berrios-Silvestre** appears in the caption as an "Associate Member of the Governing Board of [EQB]."  The complaint mentions him once following the case caption.  This mention reads in its entirety: "[Berrios] is an Associate Member of the Governing Board of the EQB and is being sued in his official and personal capacity. As a member of the Board, he acted under color of law in

_____

[6] All quotes from the complaint are <u>sic</u> except as indicated by brackets.

enforcing Puerto Rico and federal environmental laws." According to Redondo's complaint, he enforced the laws — that is all.

**Eugene Scott-Amy** appears in the caption as "Vice-President of the Governing Board of [EQB]." The complaint alleges that Scott worked for the law firm that represents BFI/Stericycle before he worked for EQB. As a result of this work, he "continues to have a strong friendship and ties to the partners and associates of said law firm." The complaint contains no other mention of Scott.

**Julio Rodríguez-Colón** appears in the caption as "Manager of the Land Program of [EQB] and Alternate Member of its Governing Board." The complaint alleges that Rodríguez was supervised by defendant López. Rodríguez, in turn, supervised María de Los Angeles Ortiz and María Janice Sostre-Rivera. The complaint contains some conclusory allegations: he "wrongful[ly] refus[ed] to issue a written authorization enabling the Plaintiffs to dispose sterilized and destroyed RBW in EQB authorized landfills"; he "conspired [with the co-defendants] to deprive the Plaintiffs of their constitutional rights and grant BFI/Stericycle rights and privileges and preferential treatment"; and he "actually promoted [María] Ortiz's unlawful and constitutional revocation of Redondo's operating permits by ordering the closing of multiple landfills that had contracted disposing services with the Plaintiff[s]." The complaint's specific allegations about Rodríguez are less

-9-

inflammatory.  He approved a waiver Redondo requested, allowing Redondo to use autoclaves when its first shredder broke.  Also, when Redondo purchased another shredder, the financing bank contacted Rodríguez.  And, finally, Redondo sent Rodríguez a letter requesting that an EQB inspector visit its facility to certify its new shredder; Rodríguez did not answer the letter.

No set of allegations specific to any defendant comes anywhere near to stating a valid claim.  Rua disappears after the caption.  López and Rodríguez's failure to answer a letter is hardly the stuff of constitutional violations.  Berrios is only alleged to have enforced Puerto Rico's environmental laws — quite the opposite of illegal conduct.  Scott has friends who are lawyers; if this were grounds for suit, the entire legal profession would be toast.  None of the defendants is alleged to have acted due to bias, to have retaliated against Redondo because of its protected conduct, to have deprived Redondo of any liberty or property interest without affording adequate procedural protections, or even to have acted arbitrarily.  Therefore, none of Redondo's claims is facially valid.

Recognizing the complaint's lack of specificity as a weakness on appeal, Redondo argues that every alleged EQB action necessarily implies action by the EQB's members.  Therefore, the argument goes, each defendant is responsible for everything the complaint alleges EQB did.  But unless EQB requires the presence

and assent of all its members to accomplish anything at all, one cannot conclude that any particular member was involved in any particular EQB decision. Cf., e.g., 12 L.P.R.A. § 8002a(a) (decisions of the Governing Board require majority vote). Indeed, the complaint does not allow us to distinguish between, e.g., Rua — who Redondo now says is not even a defendant despite being an alleged member of EQB's governing board — and Berrios — who Redondo still insists is a proper defendant even though it has never charged him with any specific misdeed. The whole point of notice pleading is to apprise defendants of the claims against them, see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); the complaint here does not do so.

Redondo argued for the first time at oral argument, and rather feebly at that, that dismissal was procedurally inappropriate because discovery had only just closed when the dismissal order entered. The idea is that the court deprived Redondo of the opportunity to amend its complaint in order to conform with the evidence brought to light by the discovery process. This argument is both waived, see United States v. Giggey, 551 F.3d 27, 36-37 (1st Cir. 2008), and unavailing. According to the district court's scheduling order, discovery closed on January 22, 2010.[7] The court filed its dismissal order

---

[7] The defendants requested that the court extend the discovery period through May 10, 2010; Redondo opposed the motion. For its part, Redondo sought an extension only for an expert report on

-11-

on March 31, 2010, and the order entered a week later.  Even assuming Redondo only obtained smoking-gun evidence on the very last day of discovery and therefore could not have produced a can't-miss amended complaint earlier in the discovery process, it would still have had more than two months to amend its complaint before the dismissal order entered.  Redondo failed to take advantage of this more-than-adequate window and therefore cannot complain now.

There is one loose end for us to tie up: Redondo says the district court should have altered the judgment to allow it to file a post-dismissal amended complaint.  We can dispatch this argument quickly.  First, Redondo argues to us that the district court erred in denying a Rule 15 motion to amend the complaint.  But there was no Rule 15 motion below; what we are reviewing is Redondo's Rule 59(e) motion to alter or amend judgment.  Whether or not we liberally construe this as including a Rule 15 motion to amend the complaint, and whether or not Redondo has properly preserved and presented the issue on appeal, the court did not abuse its discretion in refusing to allow amendment of the complaint post-judgment.  See ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46,

damages.  The court never acted on either request, dismissing the complaint instead.
    The docket does contain documents suggesting that the parties ignored the scheduling order, ignored an order to appear for a status conference, and continued conducting discovery after the deadline had passed.  The parties' flouting of court orders, though, does nothing to help Redondo.

55-58 (1st Cir. 2008). Second, the district court's denial of Redondo's Rule 59(e) motion was utterly appropriate in any event, because Redondo neither highlighted any newly discovered evidence sufficient to resurrect its claims nor pointed to any manifest error of law the district court committed. It would have had to do one or the other in order to succeed. Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (noting that "[t]he general rule in this circuit is that the moving party must either clearly establish a manifest error of law or must present newly discovered evidence" (internal quotation marks omitted)). Now, it irrelevantly argues that the defendants would suffer no prejudice if we were to reinstate the case post-dismissal. Needless to say, this off-point argument fails.

Redondo's complaint did not meet even minimal pleading standards; therefore, we **affirm** the district court's dismissal order. The district court correctly denied Redondo's belated attempt to remedy the complaint's deficiencies; therefore, we **affirm** the district court's denial of Redondo's motion to alter or amend. Costs to appellees. **So ordered.**